IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KATHLEEN WALLACE                                                                    PLAINTIFF

vs.                                          CIVIL NO. 06-5070

MICHAEL J. ASTRUE[1], Commissioner
SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kathleen Wallace, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration (Commissioner), denying her applications for disability insurance benefits ("DIB") and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act.

**I. Background:**

Plaintiff protectively filed her applications for DIB and SSI on September 26, 2003, alleging disability since June 20, 2003, due to hearing loss and depression. (Tr. 49-51, 70). An administrative hearing was held on November 21, 2005. (Tr. 209-260). Plaintiff was present and represented by council.

At the time of the administrative hearing, plaintiff was fifty-eighty years old and possessed a Bachelor of Arts Degree in Journalism. (Tr. 13, 76). Records reveal that she has past relevant work experience as a news writer, sales associate, and substitute teacher. (Tr. 219-220).

The Administrative Law Judge ("ALJ"), in a written decision dated January 17, 2006, found that plaintiff's impairments were severe. (Tr. 12-20). However, she concluded that plaintiff retained

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

the residual functional capacity ("RFC") to perform work at all exertional levels, limited by her inability to work near concentrated loud noise or where precision hearing was required. Further, the ALJ found that plaintiff could not climb scaffolds or ladders, should avoid working at unprotected heights and around dangerous machinery, and could only perform work where the interpersonal contact was routine but superficial; the complexity of tasks was learned by experience; the use of judgment was within limits; and, the supervision required was little for routine tasks and detailed for non-routine tasks. (Tr. 19). With the assistance of a vocational expert, she concluded that plaintiff could still perform the position of housekeeper/cleaner. (Tr. 19-20).

On March 17, 2006, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the matter is now ready for decision. (Doc. # 8, 9).

**II. Standard of Review:**

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)©. A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

### III.  Evidence Presented:

Records indicate that plaintiff has a history of high cholesterol and lipid levels and has been prescribed Zocor. (Tr. 128). She also has a history of hearing loss that dates back to childhood.

On February 27, 2002, plaintiff underwent hearing tests with Dr. Elizabeth Bowden, an ear, nose and throat specialist. (Tr. 129). Records indicate a pure tone audiogram frequency of 50 decibels in the right ear and 55 decibels in the left ear. (Tr. 129).

On September 9, 2002, records from the Community Clinic indicate that plaintiff had recently undergone an echocardiogram to determine whether or not her heart had been damaged by her previous use of the drug Phen-Phen. (Tr. 159). Testing reportedly revealed "20 percent" damage to the heart. While plaintiff did state that she had filed a lawsuit, she denied experiencing chest pain, palpitations, or shortness of breath. Further, the record contains no additional evidence regarding plaintiff's heart. (Tr. 159).

On February 25, 2004, plaintiff underwent a mental status evaluation with Dr. Savanna McCain, a psychologist. (Tr. 133-136). Plaintiff complained of overwhelming depression since her divorce in 1999. She also stated that she could not finish tasks and had a low tolerance level. Dr. McCain noted that plaintiff was oriented to time, person, and place. (Tr. 135). Dr. McCain diagnosed plaintiff with major depression and a hearing problem. (Tr. 135). Despite plaintiff's hearing problem, she observed that plaintiff could communicate effectively, though she would need adjustments for her hearing deficit. (Tr. 136). She also noted that plaintiff was very tearful and had low motivation. However, plaintiff's stream of mental activity was spontaneous and well organized, and she denied any hallucinations, delusions, obsessions, anxiety, or panic related symptoms. (Tr. 134). Further, plaintiff also reportedly got along well with others and was able to take care of her personal needs, although Dr. McCain noted that she did not always bathe regularly. (Tr. 136).

On March 8, 2004, Dr. C. Murl Baker performed an audiological evaluation of plaintiff. (Tr. 137). She reported having some degree of hearing loss since childhood, and stated she had used

hearing aides since 1985. An examination showed plaintiff's external auditory canal, tympanic membrane and middle ear to be normal after the removal of cerumen. Plaintiff reported no fluctuations in hearing or dizziness. Dr. Baker determined that plaintiff had moderate to severe flat SN (sensorineural) hearing loss[2] that improved approximately 30 to 35 decibels with hearing aides. As such, he concluded that plaintiff benefitted from the use of hearing aides and advised her to return to his office on an as needed basis. (Tr. 137).

On June 24, 2004, plaintiff underwent a mental status examination by Dr. Gene Chambers, a neuropsychologist. (Tr. 146-150). Plaintiff complained of profound hearing loss and situational depression. She told the doctor that she had tried substitute teaching but was unable to continue because the "kids got on her nerves." Further, she reported receiving counseling services on an intermittent basis since her first divorce in 1974 or 1975. However, plaintiff indicated that she was not currently undergoing treatment. Dr. Chambers diagnosed plaintiff with a single episode of major depression. (Tr. 149). He opined that plaintiff's depression "could respond significantly within the next twelve month period of time if she receives proper medication and supportive counseling." (Tr. 149).

Dr. Chambers noted that plaintiff communicated effectively and was easily understood. (Tr. 149). She reported no difficulties with bathing or dressing herself, indicated that she did drive, was able to do some shopping, and could perform most household chores. (Tr. 149-150). As such, Dr.

---

[2] Sensorineural hearing loss occurs when there is damage to the inner ear (cochlea) or to the nerve pathways from the inner ear (retrocochlear) to the brain. Sensorineural hearing loss is permanent and cannot be medically or surgically corrected. It not only involves a reduction in sound level, or the ability to hear faint sounds, but also affects one's ability to hear clearly. Sensorineural hearing loss can be caused by diseases, birth injury, drugs that are toxic to the auditory system, and genetic syndromes or may result from noise exposure, viruses, head trauma, aging, and tumors. *See* American Speech-Language-Hearing Association, *Type, Degree, and Configuration fo Hearing Loss*, *at* www.asha.org/public/hearing/disorders.

Chambers determined that she had a Global Assessment of Functioning ("GAF") score of 63.[3] (Tr. 149). He also concluded that her concentration, persistence and pace were within normal limits. (Tr. 150). Dr. Chambers noted that plaintiff seemed very articulate and intelligent. (Tr. 150).

On June 25, 2004, records from the Community Clinic reveal that plaintiff was somewhat obese and was not exercising regularly. (Tr. 151). Due to high cholesterol levels, she was prescribed Zetia. Her diagnoses included hyperlipidemia and depression. (Tr. 151).

## IV. Discussion:

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged disability due to a hearing deficit and depression. After reviewing the medical evidence and testimony of record, however, we conclude that the ALJ's determination that

---

[3] A GAF score of 63 is characterized by some mild symptoms or some difficulty in social, occupational or school functioning, but indicates a person is generally functioning pretty well and has some meaningful interpersonal relationships. See American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th edition Revised 2000).

plaintiff's subjective complaints are not totally credible is supported by substantial evidence. Neither plaintiff's testimony nor the objective medical evidence supports her allegations.

First, we note that plaintiff has been diagnosed with hearing loss and has reported problems with her hearing since childhood. However, plaintiff has been wearing hearing aides since 1985 and Dr. Barker noted that she benefitted from their use. (Tr. 137). Drs. McCain and Chambers also indicated that plaintiff was able to communicate effectively, in spite of her hearing limitations. (Tr. 133-136, 146-150). Plaintiff testified that she was able to understand a person who was speaking directly to her (lip reading) but experienced difficulty when trying to differentiate voices in a crowd. (Tr. 235). In fact, at the time of the administrative hearing, she was working as a substitute teacher for the Springdale Independent School District three to four days per week. (Tr. 216, 226). Plaintiff stated that she taught all grade levels, including pre-kindergarten through senior level high school classes. As a part of her duties, plaintiff stated that she attended meetings and in-service training. (Tr. 227). Plaintiff also indicated that she reported to the school office each morning to receive instructions for the day. (Tr. 226). Although the ALJ concluded that this did not rise to the level of substantial gainful employment (based on her earnings), we find that it does evidence her ability to perform work-related activities. 20 C. F.R. §§ 404.1571, 416.971; *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that plaintiff's ability to perform part-time farm work belied a finding of total disability).

The record is also devoid of evidence to suggest that plaintiff had difficulty hearing or understanding her attorney or the ALJ at the administrative hearing. *See Lacroix v. Barnhart,*, 465 F.3d 881, 889 (8th Cir. 2006) (holding that fact that plaintiff used hearing aides, read lips, and did

not experience difficulty hearing or understanding the ALJ weighed against her claim for disability). In fact, the record shows that plaintiff was able to work for twenty years as a journalist, despite her hearing loss. (Tr. 147). *See Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001) (holding that fact that plaintiff was able to work for years with her impairment indicates her impairment was not disabling). Clearly, this suggest that plaintiff is able to communicate effectively in a work environment.[4] As such, we find substantial evidence to support the ALJ's finding that plaintiff's hearing limitations were not disabling.

The record also reveals that plaintiff has been treated for depression. At the time of the hearing, plaintiff reported taking Prozac. (Tr. 228, 229). We note, however, that she has not sought consistent treatment for this condition. Plaintiff told Dr. Chambers that she had undergone counseling "off and on" since her first divorce in 1974 or 1975 but was not currently receiving counseling services. (Tr. 146-150). *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). While we are cognizant of the fact that plaintiff was living on a limited income, we also note that she received medical treatment from a Community Clinic. As such, plaintiff was aware of and had availed herself of the medical treatment and services available for the indigent and those with financial constraints. Therefore, we cannot say that plaintiff's financial status prevented her from seeking consistent mental health treatment. *Murphy v. Sullivan*,

---

[4] We are aware of plaintiff's argument that the students have to communicate with her one-on-one in order for her to understand them. We are also cognizant of her statement that the students have occasionally realized her hearing impairment, resulting in her total loss of control over the classroom. (Tr. 240). However, we believe it is reasonable to conclude that had plaintiff's hearing impairment affected her ability to maintain control over her classroom, this issue would have come to the attention of her employer (through students or other teachers in the surrounding classrooms). As this has not occurred, it appears as though plaintiff has been able to maintain order and control over her classroom, in spite of her hearing impairment.

953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

Dr. Chambers and McCain also noted that plaintiff was able to get along well with others. (Tr. 133-136, 146-150). In fact, at the time of the hearing, she was living with her ninety year old mother and kept in regular contact with her daughter and a friend. Plaintiff also reported an ability to care for her personal hygiene, attend church, go to the bank and post office, shop for groceries (with her Mom), and substitute teach. (Tr. 8-87, 136, 149-150). Had plaintiff's depression been as severe as alleged, we do not believe she would have been able to participate in these activities, as they do require a great deal of interaction with others.

We also note Dr. Chambers' opinion that plaintiff's depression could respond significantly within the next twelve months given the proper medication and supportive counseling. (Tr. 146-150). *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (holding that an impairment that can be controlled by treatment or medication is not considered disabling). Dr. Chambers also found her concentration, persistence and pace to be within normal limits and gave her a GAF score of 63, which is indicative of only mild symptoms or difficulty in social, occupational or school functioning. (Tr. 160). *See* American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th edition Revised 2000). These findings, coupled with the fact that plaintiff was still working, suggests that plaintiff's depression did not significantly impede her ability to perform work-related activities.

Plaintiff has also alleged disability due to pain in her hips and legs. However, after reviewing the evidence contained in the record, we can find no medical evidence to support plaintiff's contention.

*See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Matthews v. Bowen,* 879 F.2d 422, 425 (8th Cir. 1989) (medical reports showing only minimal back problem allowed ALJ to discount claimant's subjective complaints of disabling back pain). We note that plaintiff has failed to report any physical limitations to her doctors. In addition, none of her doctors have placed limitations on her ability to perform physical activities. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). The records also reveal that plaintiff was not taking any prescription pain medication. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). As such, we can not say that her pain is disabling.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. On her supplemental interview outline, plaintiff reported an ability to care for her personal hygiene, do the laundry, wash the dishes, change the sheets, vacuum/sweep, take out the trash, shop for groceries, go to the bank and post office, prepare 7 simple meals per week, pay bills, use a checkbook, count change, drive, attend church, watch television, and read. (Tr. 86-87). She also testified that she was working as a substitute teacher. (Tr. 216). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated her pain did not interfere with her ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

In addition, plaintiff reportedly received unemployment benefits in 2004, which is clearly inconsistent with her claim of disability. While this, alone, does not provide a sufficient basis for discrediting plaintiff, when combined with the fact that she has continued to work, we find that this evidence sufficient to undermine her credibility. *See Salts v. Sullivan,* 958 F.2d 840, 846 n. 8 (8th Cir.1992) (holding that acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability).

Therefore, although it is clear that plaintiff suffers with some degree of impairment, she has not established that she is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform work at all exertional levels with nonexertional limitations. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's

"ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545©, while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark.1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessments of non-examining agency medical consultants, plaintiff's subjective complaints, and her medical records. On March 18, 2004, Dr. Jerry Owens, a non-examining, consultative examiner, completed an RFC assessment of plaintiff. (Tr. 183-190). After reviewing her medical records, he concluded that plaintiff had no exertional limitations. However, he did note that she could not work in areas where excellent hearing is required or in an extremely noisy environment. (Tr. 183-190).

On July 7, 2004, Dr. Kathryn Gale, a non-examining, consultative psychologist reviewed plaintiff's mental health records. (Tr. 191-208). She determined that plaintiff was suffering with depression. As a result, Dr. Gale concluded that plaintiff has moderate limitations with regard to maintaining attention and concentration for extended periods of time, completing a normal workday and workweek without interruptions, and interacting appropriately with the general public. She found that plaintiff had only mild limitations regarding her ability to carry out activities of daily living and function socially. Therefore, Dr. Gale was of the opinion that plaintiff could perform work where the interpersonal contact required was routine but superficial, the complexity of the tasks was learned by experience, the judgment required for the tasks was limited, and the supervision required was little for routine tasks and detailed for non-routine tasks. (Tr. 191-208).

After also considering plaintiff's medical records and her subjective complaints, the ALJ determined that plaintiff could perform work at all exertional levels, limited by her inability to work near concentrated loud noise or where precision hearing was required. Further, the ALJ found that plaintiff could not climb scaffolds or ladders, should avoid working at unprotected heights and around dangerous machinery, and could only perform work where the interpersonal contact was routine but superficial; the complexity of tasks was learned by experience; the use of judgment was within limits; and, the supervision required was little for routine tasks and detailed for non-routine tasks. Following an independent review of this matter, we find substantial evidence to support the ALJ's RFC assessment. While it is clear that plaintiff does suffer from a hearing deficit and depression, the evidence also reveals that plaintiff has been able to work as a substitute teacher and perform other activities, in spite of these impairments. For the reasons previously stated in this opinion, the ALJ's decision will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform the position of housekeeper/cleaner. A VE testified that a person of plaintiff's age and experience, who had no specific exertional impairments; could not climb scaffolds or ladders; could not work in high exposed places or near dangerous machinery; would need to avoid concentrated loud noise; could not work in places where precision hearing was required; and, would need a job where the interpersonal contact required was routine, but superficial, the judgment required was within limits, and the supervision needed was little for routine work and detailed for non-routine tasks, could perform light unskilled work as a housekeeper/motel cleaner with 7,000 such jobs in the state of Arkansas and 894,000 in the nation. (Tr. 258-259). After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments which

the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

Likewise, we find the VE's testimony that plaintiff could perform this position to be consistent with the Dictionary of Occupational Titles ("DOT"). While we are cognizant of plaintiff's argument that her hearing impairment would interfere with her ability to communicate directly with patrons, as is required by the DOT, we do not find this to be a problem. If plaintiff is able to perform the duties of a substitute teacher, we see no reason why she could not communicate with hotel patrons.

Plaintiff also contends that this position would require her to hang curtains, which would fall outside the parameters of the ALJ's limitations because it could require the use of a ladder. However, we do not find this argument to be persuasive. The position of housekeeper/cleaner, as described in the DOT, clearly states that it does not require climbing or exposure to heights. *See* Dictionary of Occupational Titles §323.687-014, *at* www.westlaw.com. Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could perform the position of housekeeper/cleaner.

### V.  Conclusion:

Accordingly, we conclude that the ALJ's decision is supported by substantial evidence, and therefore recommend that the denial of benefits be affirmed and plaintiff's complaint be dismissed with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this <u>1st</u> day of March 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE